case number 25-1753. Jamal Kifafi, individually and on behalf of all others similarly situated, imbalanced, v. Hilton Hotels Retirement Plan, et al. Mr. Bruce for the imbalanced, Mr. Youngwood for the employees. Good morning, Mr. Bruce. You may proceed when you're ready. Thank you, Your Honor. May it please the Court. The judgment here is one that we secured in this litigation after 15 years. It provides for increased retirement benefits to a class of over 20,000 people. There was not just a general order describing the relief, but the relief was actually calculated individual by individual by the defendants, Hilton, and reviewed by the plaintiffs. Those calculations are described in my former associate Allison Pienta's declaration at JA 182, and it was called a true-up spreadsheet. The true-up spreadsheet was, as I said, calculated by Hilton based on the formulas that the court adopted in order to be adopted by Hilton in a plan amendment. For the first two years after this case came back from the Court of Appeals, for the first two years, implementation went relatively smoothly. Judge Catelli, it was taking up some of Judge Catelli's time because there were issues, but a lot of people were paid. As soon as the district court stopped the active supervision of this case, the progress dropped to the floor. We weren't expecting that. The queue, which is in Exhibit 2 at JA 197, showed that there were a number of beneficiaries who had been notified, and Ms. Pienta's declaration at JA 183 through 184 goes over that queue and talks about how the beneficiaries had contacted Hilton, and we had gone out and confirmed additional addresses. So the total of that was like 1,500 people, but the progress, as soon as Judge Catelli ended active supervision, the progress dropped to less than 100 per year. Actually, the progress slowed a little bit before she relinquished active jurisdiction. It actually had already slowed a bit. No, the last year from April 2014 to April 2015, it was 1,625 new payments. And so going from 1,625 to less than 100 was a big drop, and it was particularly a big drop because there were a lot of people in the queue that we thought were going to be paid. So that is, and 10 years later, we're still waiting for any kind of a spurt or a jump in the payments. It just hasn't happened. And now at this point, do you know what the number of unpaid class members is? The number of unpaid class members that we're calculating is around 7,200. What Hilton said in the declaration was that it was only 2,800 left. But so there was a difference there between the 8,000 that they were starting with and what they said it is today of about 5,200 people. We said that those 5,200 people were not accounted for. So what you're referring to is the numbers as of October 2022. That's the number that I see in the record from, Hilton says 2,791. Right. But that's already three years ago. So you don't have any information about any progress in the last three years? No, we have the information from the form 5,500, which indicates that there has not been any jump in annuitants or people who've received lump sums. And so we do have some information since then from the form 5,500, but we don't have any information from Hilton. And in the opposition brief, which Hilton filed on this appeal, Hilton, we had pressed on that this 5,200 people were not accounted for and that they were in addition to the 2,791 that we had pressed on that. And in response, Hilton did say in their opposition that some of those individuals may well have already been paid or were otherwise determined to be ineligible to receive benefits under the plan. So that's on page 45 of their opposition brief. That was the statement that people have otherwise been determined to be ineligible to receive benefits under the plan is inconsistent with the true-up list. There was no provision for Hilton to come along and change the calculations and the individuals who were named as receiving relief. That was our fixed starting point. And if Hilton found something where they felt there was a need to change the injunction, the procedure is to come into the court. Because obviously changing the injunction five or ten years afterwards is a big deal. And there needs to be notice to the class and approval by the court. And approval by the court would be fairly rare. There was no anticipation of that. And so this was a big reveal here, which was not ever broached with Judge Kotele. What Judge Kotele was told was that 95% of the class, of that class of 20,600, that 95% of that class had been paid or notified of increases in their benefits. Did you raise this issue before, Judge Kohler-Kotele, the issue of Hilton changing its view of who is entitled to relief? No, because we didn't have any statement like this. What we raised was that there was 5,200 people unaccounted for, that we couldn't find that... 5,200 unaccounted for. 5,200 unaccounted for, plus they were conceding that there were 2,100 who had been notified but not paid. And so the total of that was where we got the 7,200. But Judge Kotele was just told 95% have been paid or notified of the increase, and that totaled to 19,000 people. Those were... It may be my fault in reading too quickly, but I didn't see this argument even in your brief before us, that Hilton had somehow reassessed who within the class is entitled to further relief. No, it's in our reply brief in three different places. We said that the 5,200 people had disappeared and that now there was some suggestion that some of them at least had been made ineligible. So that was a new development. Is there any... It seems to me from reading this that whether you're entitled to post-judgment discovery, the standard for that is about the same as whether you're entitled to an accounting. Is that correct? Yes, I think so, yes. And I think that's part of what tells us that the standard for post-judgment discovery that the district court applied was incorrect, because the standard for an accounting is that it's a reasonable request, that it's like the standard for discovery, that if you've got a request that will produce potentially favorable information for your side, that you're entitled to discovery on that. And that's essentially what the standard for an accounting is. And both standards, or one or the other, at least partly depends upon whether you've provided sufficient evidence of non-compliance with the injunction. Well, under the Levitt and Damas standard, it's significant evidence of non-compliance and... Well, they put in a significant question, which... Significant question, yes. Doesn't seem to me makes... I can ask a significant question where the answer is perfectly clear. It's not the question that matters, it's what the evidence indicates. Well, and the Levitt case has two helpful principles to that. And the first is that a significant question regarding non-compliance is necessarily considerably less than proving non-compliance. I have a question about the distinction, if any, between generally post-judgment discovery and an accounting. And I was looking in the record to see sort of the reports that, for example, Hilton submitted when the Labor Department was doing its inquiry, or any kind of spreadsheet that would just show the status of the outstanding claims in some kind of really summary form. And I know you've asked for a lot more than that, but to the extent that an accounting is something more limited, less burdensome, but that just gives a snapshot into where things stand, do you have anything you can tell me about what is an accounting in this context? Well, I think an accounting in this circuit, the leading case is Cobell versus Salazar, which was about the Department of Interior's accounting for the Indian trust funds. And I think in that context, what an accounting, an equitable accounting meant was the records were in such a condition that you could not get an accounting firm to do an accounting statement on them. And so they used an equitable accounting to be more practical, but it's not, it doesn't mean the same as a summary. That in some cases, maybe a summary would be sufficient, but in the Cobell case, they did a thorough accounting, as I understand it. So what, I mean, if it were a spreadsheet, what would the columns be? I guess I'm asking sort of what would be the minimum that would give, I mean, what I'm concerned about, let me just lay this out, is we held in the last decision remanding this to Judge Kohler-Catelli, that even though she had terminated active supervision, that that didn't mean that she didn't have jurisdiction to make sure that Hilton was keeping up with its obligation under the permanent injunction to continue to fulfill its obligations. But her stepping back from active supervision means it's on the plaintiff, class representative, and counsel to make sure, and the Labor Department is no longer investigating, so to make sure that things are moving along. But it's hard to see it as an abuse of discretion, what Judge Kohler-Catelli, Judge Kohler-Catelli's unwillingness to give you all the information that you want. Clearly, that information would give you a lot to work with. But she says, no, it's my discretion that I'm not going to give you all that information. But she didn't separately address the question of an accounting as such. And so what I'm trying to understand is, does she need to, is that something distinct that is more streamlined, that is just a bird's eye view? And if so, what would be the essential components of, I mean, I'm envisioning a spreadsheet, but you're the expert, you tell me, what would be something where you could keep track, and if you had information about someone's whereabouts, or somebody contacted you to say, look, I really haven't been paid what's going on, or I got this notice, what do I do, that you would have some insight into what's going on? Well, I think the good thing here is that up until when Judge Catelli ended the active supervision, we were getting status reports from Hilton that were in the form of spreadsheets. And so that was what our Exhibit 1, our Exhibit 2, were based on those spreadsheets. So we weren't, we were getting, we were getting information for each individual. And Your Honor actually asked Hilton's counsel about that in 2019. Are you still keeping these records? And Hilton's counsel's representation was, yes, they are. We don't have a copy of any of those status reports that I've seen in the record, either the appendix here or in the district court record, is that right? But you did, you were receiving those? Yes. And can you describe what, how much information was in those? I mean, I can also ask Hilton, but... They were, it was individual by individual for the 20,692 people. And it included addresses that were being used, but it also included, you know, whether they had responded and, and, and you're not getting those anymore. We've, no, we haven't gotten those since, since 2015. Then in 2017, we got an abbreviated list of the new payments that just said paid and didn't give any other information and it didn't give any information about the people who were not paid. So that was the list that just gave us information for 187 people when we were expecting hundreds of, 187 people for two years when we were expecting hundreds of, of new payments. So they didn't, they only gave you the people that had, in their view, successfully contacted, they didn't give you the other status for the outstanding. Right. Suppose we rule against you on the first question regarding discovery. In other words, no serious question regarding compliance. How could it then be an abuse of discretion on the accounting issue for the district court to conclude that an accounting is not an appropriate equitable relief to regress RISA? Well, I think the... Seems like the claims rise or fall together. Well, the, the first question of the significant question regarding non-compliance, that it's considerably less than proving non-compliance. Judge Catelli was using a standard where we would have to prove... Assume we rule against you on that point. I'm just trying to figure out what independent work, if any, your accounting claim does. I think that... Seems to me once you lose on question one, you've lost on question two. No, because question one, the standard should be almost identical to an accounting. That's my point. If the, if the standard is raised up, like to this level, and the accounting standard was here, then, then the accounting comes into play because, because you've, the significant question standard has been transformed. But that doesn't help you because the, the premise of Judge Katz's question is, you haven't shown a significant risk of non-compliance or, you know, significant possibility. And so if that's the standard, why doesn't that apply both to an accounting and more generally to post-judgment discovery? So is there anything that entitles you to an accounting, even if you are not generally entitled to the other post-judgment discovery that you seek? Well, if we're not entitled to post-judgment discovery, it, under Judge Catelli's decision, that is because the district court was not following the Levitt or the Damas decisions, but was instead following this Western District of Oklahoma decision from 20 years earlier. You're just arguing that you win on the discovery point. I think you're resisting the... No, I'm saying that, that Judge, the district court's decision is predicated upon the significant question standard being transformed into something other than what it was in, in Damas or Levitt. I want to come back to Judge Katz's and Judge Pillard's question. It seems to me that an accounting, and it was common law as well as equity, from what I understand, that it's just, an accounting is a form of discovery. And in fact, I was just reviewing your motion that was filed after the status report, and you say essentially that in your motion. And then you quote some a treatise from 18, what is it? 1895 saying, saying essentially... Right. It really preceded the discovery rules. Right. Yeah. So before, yeah, before discovery, so to get back to the question, if you're going, if you're not going to be allowed and properly, and not allowed to conduct post-judgment discovery, it follows that you're not entitled to an accounting because accounting is a form of discovery. No, no. Well, where do you get off the, off the boat on that question? Well, I think because when we're saying that, that an accounting and post-judgment discovery standards are very similar, it's based on Levitt and Damas. It's not based on this 1980 decision from the Western District of Oklahoma, which is... It is based on Elias Merwin principles of equity pleading, 1895, according to your motion. Right. Right. An accounting, well, the case that we cited too was, was there's an 1810 Supreme Court decision on an accounting where a partner in a jewelry store, you know, had suspicions about his partner. And, and the court said that he was entitled to an accounting, which would mean, you know, where all the money went, that he was entitled to an accounting, even if it was not probable that he was going to win. Because, because when somebody has a fiduciary, when people have fiduciary duties to each other, that you want the beneficiaries to be able to get information to see whether it's being, whether the fiduciary duties are being carried out. And here, I mean, we've got 10 years and, and we've got 5,200 people who are just disappeared and seem to have been classified as ineligible. And we have another 2,100 people who just sit there year after year, not getting paid. And there's no inquiry into why they're not being paid. Why are they not getting their retirement benefits? And one thing that, that may not be obvious is what we were doing was we got increases to retirement benefits. And so the people who are not getting paid are not only not getting those increases, they're not getting the base amount that, that they were entitled to even before our lawsuit. All right. Thank you.  All right. We'll give you some, a couple minutes for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court, Jonathan Youngwood for the appellees. I want to begin, Judge Randolph, with your question as to the difference, if any, between an accounting and the discovery. And I'd submit to you, at least in this case, there's none whatsoever. I'm not sure there'd ever be. But if you look at the record at page 176, which is plaintiff's proposed order, had the motion been granted, he's very clear as to what relief is sought. And specifically on page 179, page 4 of the proposed order, the request was that defendants shall provide counsel to the class and this Court with full discovery and a full accounting of Hilton's implementation of the injunction since February 2015. It then goes on for about 10 lines to describe what that means, which is effectively massive discovery concerning every contested class member, every contact with each class member. And then it goes on to discuss all communications between Hilton, its officers, agents, and the planned service providers and outside counsel related to the implementation. You can also look at that joint status report where the plaintiff sets forth its intention. And when you get to the question that you're discussing, it's put in terms of discovery slash accounting. Exactly, Your Honor. And interestingly enough, in this Court's two-times-ago decision, the decision from 2019 on page 3 of the per curiam decision, when there is discussion again of post-judgment discovery and compliance reporting, which the describes as akin to seeking an accounting, it is quite clear that this Court interpreted the plaintiff's position on that appeal and adopted it that they're really one and the same. That's page 3 of this Court's decision, the first full paragraph. There are multiple other times in the record where there is this clear overlap. And so I do think, Judge Katsas, it goes to what is the standard and whether there are really two questions before you or one. And I would submit to you that only one question before you, which is maybe one with a 1A and a 1B, which is what's the right standard and was it applied? I have a couple of questions about that. One is the named plaintiff has an obligation, a fiduciary obligation to the class. And it's hard for me to envision how that obligation can actually be fulfilled without some kind of something like the status report. And I hear you and I read Judge Colartelli to say wanting everything, the correspondence, every last jot and tittle of what has gone on as Hilton has proceeded to try to implement the injunction, it's hard to see that she's abused her discretion in denying that. But on the other hand, the notion that you have a class representative in a responsible role to make sure that the class members are getting their due, how is plaintiff supposed to do that with zero information? Well, Your Honor, I guess I'd answer it this way. First of all, I think the plaintiff is well represented by my friend, Mr. Bruce, who has fought this case for coming up on three decades and searching for whatever he can show to get to some discovery. But it still has to live within the confines of this court's 2019 decision and more generally within the confines of the test for post-judgment discovery. But as to my actual question, which is how is a person with a responsibility to make sure that this is continuing to go along, even assuming that there's no bad faith, but if there's ways that things that they can point out that might be helpful or just a gentle like knowing there's watching. I mean, obviously, your incentives, your client's incentives are not aligned with the plaintiff class and the plaintiff's class representative's incentives are. So just in a very basic sense, just like in COBEL where there's a trust obligation, typically we do require some kind of accounting where a person or an entity is in a fiduciary role. So respectfully, I think I disagree with the premise. I don't know that my clients, which have their own duties to class members, are opposed to the interests of the lead plaintiff or of the class. My clients have every incentive. I stood before this court six years ago and said, I'm quoting from the court's decision that Hilton has a continuing obligation to try and find anyone who comes into status and to pay the things. And I don't think there is a divergence of interest. I understand there's two different people and this is an adversarial proceeding in the court sense, but Hilton has its own responsibilities to take care of its plan beneficiaries. Your Honor, what could they find to answer the question? They can find significant questions going to systemic issues. That is the reading of the 2019 decision of this panel, of the panel of this court. And it's consistent with the Damas case, which to get to it, I don't think we are disputing as the standard or plaintiffs are disputing as standard either for post-judgment discovery, that's on page 18 of plaintiff's opening brief, or on page 22, they recite the same standard for accounting. So we almost, I'm going to suggest you have the opposite of that proof here. And why do I say that? I say it because of the issue of the application for the submission of additional evidence, which plaintiff's counsel made before the district court. And on pages A694 and 695, the motion to supplement the record was granted. The reason I point to it is it was an example of one, one class member, one, with an issue. And I would submit to you that almost proves the negative for me. The rate, what's your, we only have the information as of October 2022. And there, it appears from, at least from your, the Denner declaration that there were 2,791 class members yet to be paid. Do you have any more current information about how many have yet to be paid? I don't have the specific numbers broken down by the categories that are in this declaration on page 5 of 74. What I can tell you is that other people have continued to come into pay status. It would be natural given that some of the time were actively employed. Some of the time had not reached the age standard. And what I can tell you is I've confirmed with my client that the steps being taken largely described in the remaining paragraphs of the declaration with some modifications as time would pass, for example, my understanding is Lifeworks is now and things like that. But those efforts to continue to find class members or to commence payments or to update payments have continued. But to your specific question, I don't have updated numbers as of today. I suspect data might be available for 2022 and 2023. I'm not sure it's soon enough for 2024 and I'm sure it's not soon enough for 2025. And the status reports that Hilton was applying initially that Mr. Bruce described, is that something that would be onerous to provide? I believe it would be onerous, Your Honor. I think the way he described them to you, it was a person-by-person list with great detail. But I also respect... I assume that that's something that Hilton is keeping anyway. Hilton has records on all the class members, absolutely. But whether it's in a form for output, I am not sure. I have not seen it for recent years. But Your Honor, I do go to the threshold question, which is, when you look at the Damas case, it's not a burden-laying test. You have to pass a threshold. I understand your argument about how he's bundled them together and also what the analysis requires. Your Honor, I won't go over my time. The one thing I think I haven't touched on, which I would like to, is the question as to whether or not the district court applied the right standard. And there's some, obviously, briefing on whether or not the mere fact that the court cited the Soya case means that she wasn't applying significant questions. I think the court should be taken at its word. In the order, the minute order issued on September 6, 2022, record at 853, the court's very clear that she is going to apply Damas. She begins her analysis on page A693 saying, I'm going to apply Damas. She then goes through a very lengthy discussion. This goes to the patent factors, the next five to six pages. And then when she reaches her conclusion on page 12 to say, now that I've reviewed everything, what's the test? What's my question? Middle of page 12, she goes back and says, measured against these standards, Cofafi's evidence does not raise significant questions. So I don't think there can be any question that she said she was going to do something in the order requiring briefing, said in the opinion she would do it. Then she did it. And then at the end, she said, I've done it. And I think that analysis, which is quite extensive over many pages, is entitled to deference from this court. Do you have any response to Mr. Bruce's argument that Hilton has sort of gone back and redefined who is a class member according to the original definition of who's entitled and how much? Your Honor, I don't have a substantive response to that other than to say, if it was in the reply, I think I missed it as well. And it certainly wasn't in the opening brief, and it certainly wasn't presented to the district court. So I don't think that's here for us today. If that's a, not that I want to invite further litigation below, and I'm hoping there is no further litigation below, but there would be ways for him to raise it below and the district court and her discretion and control over her docket could address it as she saw fit. Thank you, Your Honor. Thank you. Your Honor, as I might have already communicated, but that the issue of changing eligibility to ineligibility is raised in defendant's opposition brief here on appeal. And it was raised in response to our questions about the 5,200 people who had disappeared. And in response to that, they said that people may be otherwise determined to be ineligible to receive benefits under the plan. These are the people who were on the true up list that Hilton themselves prepared and we don't even know who these people are and how many of them there are. And they're in response to our point that the people who disappeared have never been addressed. We made that point to the district court and we made it on appeal. And in response to that, they said, well, they're changing people from eligible to ineligible. Where are you seeing that in their brief and where are you raising this in your reply brief? They're saying this on page 45 of their opposition. In our reply brief, I've written down somewhere where, but it's literally in at least two different places that we talked about that they were now broaching this new argument about making people ineligible. And that it was okay to do that as if there was no rules protecting people when they have an injunction in their favor that the adjoined party can just change it. That's... All right. Can I supply the court with the places in the reply brief? You may, but we'll be able to read it carefully and with more time and we'll look for that. Thank you. Okay. Thank you. Case is submitted.
judges: Pillard; Katsas; Randolph